**CARPENTERS FIJI, LTD., Plaintiff**

**v.**

**JOEL F.C. PEN, JOHN'S GENERAL CONSTRUCTION CO., dba J.G.C. LUMBER AND HARDWARE, and KYOWA SHIPPING CO., LTD., jointly and severally, Defendants**

High Court of American Samoa
Trial Division

CA No. 111-94

October 20, 1995

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Marshall Ashley
For Defendants Joel F.C. Pen and John's General Construction, Co., Togiola T.A. Tulafono
For Defendant Kyowa Shipping Co., Ltd., Ellen A. Ryan

Order in Aid of Judgment:

On September 8, 1995, this court rendered judgment in favor of Carpenter's Fiji Ltd. ("Carpenters") in the principal sum of $70,176.26, against defendant John's General Construction Co. ("JGC"). On September 13, 1995, the clerk issued a writ of execution commanding liquidation of JGC's business assets for the purpose of satisfying the judgment. Meanwhile, on September 11, 1995, JGC made a motion for an order in aid of judgment, and this court stayed the clerk's writ of execution on the day it issued.

The motion for an order in aid of judgment was heard on September 25, 1995, at which time the parties stipulated to an agreement requiring JGC to make bi-weekly payments of $1,500 to Carpenters, and to refrain from disposing of assets other than in the normal course of business. Such payments were to commence on October 2, 1995. We approved these terms, continued the matter to October 13, 1995, and added the provision that the stay of execution would be lifted without further order of the court if JGC failed to make its first ordered payment by October 2, 1995.

At the hearing held on October 13, 1995, counsel for Carpenters asserted that JGC's first payment check, although timely, had failed to clear the bank, and argued that the stay of the writ of execution should therefore be lifted. JGC claimed to be unaware of the problem prior to the hearing,

59

and claimed that there were sufficient funds in JGC's account to cover the check. Counsel suggested the possibility of confusion by the bank because of third party garnishment proceedings.

 When deciding the propriety of an order in aid of judgments, courts are guided by considerations of justice and equity. A.S.C.A. § 43.1501(b) provides:

> Upon such application [for an order in aid of judgment] or upon its own motion, the court, after *notice to the debtor* or if he is then present in court, may hold a hearing on the question of the debtor's ability to pay and determine the fastest manner in which the debtor can *reasonably* pay the judgment. (emphasis added).

After making the determination called for in the foregoing statute, the court is provided with broad powers to effect a just and equitable result.

> Upon having heard the evidence or having received the report of the single judge, the court shall make such an order in aid of judgment as is *just* for the payment of the judgment. . . . The order in aid of judgment may provide for the transfer of particular assets at a value determined by the court, or for payments in specified installment on particular dates or at specified intervals, or for *any other method of payment which the court deems just.*

A.S.C.A. § 43.1502 (emphasis added). The foregoing equitable principles and broad powers apply equally well to circumstances where a judgment debtor seeks a stay of execution. A.S.C.A. § 43.1504 (emphasis added) states, in relevant part:

> If a writ of execution is outstanding, a judgment [debtor] shall file the writ with his application and a judgment debtor applying for an order in aid of judgment may request a stay of execution which may be granted by the court on such terms, if any, *as it deems just.*

The foregoing recitations of statutory language demonstrate that the courts have been granted broad powers to see that the implementation of its judgments will not be unduly harsh, or unfair to either party.

 The law favors installment payments where it would be "inequitable to force petitioner to pay the whole [$70,176.26] all at once,

60

not that he should be allowed to evade payment altogether." *Huff v. Huff*, 15 A.S.R.2d 83, 86 (Trial Div. 1990). This relief should be available even where the judgment debtor does not have "clean hands." *Id.* Furthermore, in the absence of a bankruptcy statute, the law of American Samoa favors orders in aid of judgment which permit the debtor to retain a reasonable amount of income producing property to provide for reasonable living requirements and family obligations. *R.S.T.T.A.N. Histake v. Dullabhbhai K. Patel*, 3 A.S.R.2d 99, 100 (App. Div. 1986) (construing A.S.C.A. § 43.0501(c)); *Samoa Products v. A'asa*, 17 A.S.R.2d 66, 70 (Trial Div. 1990) (construing A.S.C.A. § 43.0501(c)). A "reasonable payment schedule" is, therefore, favored in the law. *Samoa Products, supra.* ·

In the present case, although counsel for Carpenters has asserted that JGC's check did not clear the bank, we did not receive any documentation or evidence to that effect in court. Furthermore, we are unable to determine whether or not a mistake had been made. Carpenters further asserted that JGC is gradually depleting its inventory, and that it is having cash flow problems which jeopardize Carpenters' future ability to collect on its judgment. The evidence of this, however, is inconclusive, and is contradicted by JGC's expenditure report for the period of April to July, 1995.

JGC's counsel, on the other hand, urges that his client is ready, willing, and able to make the monthly stipulated payment of $1,500, together with payments of its other obligations, some of which were preferred secured debts.

While JGC's expenditure report and analysis leaves something to be desired, we hold, for the present, JGC to its stipulation of $1500 monthly. Given its total debt picture, it is, for the time being, in everyone's interest, to preserve the status quo. JGC will rectify forthwith, if it has not already done so, any problem regarding a returned check for a past due payment. Henceforth, JGC will make timely payments as previously ordered, and see that deposited funds are sufficient to cover its checks.

It is so ordered.